UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID ZWICK,

Plaintiff,

v.

NICHOLAS PRICKEL,

Defendant.

Case No.  26-mc-80072-WHO

**ORDER REGARDING MOTION TO COMPEL COMPLIANCE**

Re: Dkt. Nos. 2, 14, 15

This case requires interpretation of Section 7 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7, on which courts around the country have split.  Some, as urged by defendant Nicholas Prickel, assert that third parties who live outside of the district where an arbitration is set to be heard cannot be compelled to testify—even if such testimony is material and highly relevant. Their position relies exclusively on the language of Section 7, which provides that an arbitral summons may be enforced only by "the United States district court for the district in which such arbitrators, or a majority of them, are sitting."  Here, the parties to the arbitration agreed that it would be held in New York City.  Other courts, supported by plaintiff David Zwick, conclude that the interpretation just described would cause a gaping hole in the ability of arbitrators to consider material evidence in a case and that nothing in Section 7 limits arbitrators from sitting in more than one district to obtain such evidence for the arbitration.

I am unaware of any intent by Congress to create a justice gap when it drafted the FAA as an alternative to judicial dispute resolution.  In this case, the parties to the underlying arbitration agreed to abide by the Rules of the American Arbitration Association and the arbitrators decided that it was reasonably necessary for them to sit in San Francisco to hear the testimony of Mr. Prickel under Rule 12.   I agree with the Sixth Circuit and other courts that have found that

nothing in Section 7 prohibits arbitrators from sitting in more than one district to gather evidence that is reasonably necessary and beneficial to the arbitration process. For the additional reasons described below, Zwick's motion to compel compliance is GRANTED.

<div align="center">

**BACKGROUND**

</div>

This dispute relates to the 2018 purchase of Redcap by Solera Holdings, Inc. ("Solera"), a "technology company primarily serving the insurance and automotive industries." Motion to Compel Compliance ("Mot.") [Dkt. No. 1] at 1. Those parties agreed to submit their dispute to arbitration conducted by the American Arbitration Association under the Commercial Arbitration Rules and Mediation Procedures for Large, Complex Disputes. Declaration of Jeff Eichmann in Support of Motion to Compel ("Eichmann Decl.") [Dkt. No. 4-1] Ex. 3 (Arbitration Agreement) at 1. The Arbitration Agreement provides that the arbitration will be conducted in New York, New York, *id.*, and that the tribunal would consist of "three arbitrators—Steven A. Certilman, Abigail Pessen, and Richard H. Silberberg—all of whom are based in New York," *see* Opposition to Motion to Compel Compliance with Arbitration Summons and Cross-Motion to Transfer ("Oppo.") [Dkt. No. 14] at 2.

Redcap alleges that Solera "deliberately suppressed" its total earnout by reducing earnout payments, "causing the Redcap sellers to lose nearly $90 million . . . in violation of the Merger Agreement and the 2020 Amendment to that agreement." Mot. at 1. In response, Solera claims that discretionary "thank-you" payments made by Redcap to its employees reduced any potential earnout amounts under the terms of the Merger Agreement and 2020 Amendment. *Id.* Both parties believe that the 2020 Amendment support their positions. *Id.* at 1–2. That document was "negotiated by Petitioner David Zwick, for the Redcap sellers, and by Respondent Nick Prickel, for Solera." *Id.* at 2. Prickel is an employee of non-party Vista Equity Partners Management, LLC ("Vista"), which "owns a controlling stake in Solera and controls Solera's board." *Id.* at 1. He resides in San Francisco, California. *See* Oppo. at 2.

"As the person who negotiated the 2020 Amendment," Zwick believes that Prickel is "uniquely positioned to answer questions about the impact of that language on Solera's counterclaims seeking millions of dollars." Mot. at 2. This is especially true when considering

<div align="center">

2

</div>

<div style="writing-mode: vertical-lr">
United States District Court
Northern District of California
</div>

that Prickel is the "only person who remains within the Vista family of companies . . . that has personal knowledge about [the] issues in the case, including his one-on-one negotiations with Mr. Zwick." Eichmann Decl. ¶ 6. Because the parties agreed that each side could have up to fifty-five hours of deposition time for fact witnesses, *see* Arbitration Agreement at 2, Zwick requested a subpoena for Prickel "to provide deposition testimony," Mot. at 2. Prickel "refused to voluntarily appear for deposition, or even to accept service of the subpoena or have the firm accept service on his behalf." *Id.* Solera also refused to produce Prickel, "despite his involvement in a critical aspect of Solera's counterclaim," as he was a third-party to the arbitration, *Id.*

Because Prickel refused to comply, "Zwick and the other claimants requested, and the arbitrators issued, a summons under Section 7 of the [FAA] requiring Mr. Prickel to personally appear at a hearing before the arbitrators in San Francisco." *Id.* That hearing was supposed to take place on April 20, 2026. Eichmann Decl. Ex. 4 (Prickel Subpoena) at 1. Prickel again refused to comply, indicating Zwick's attempt to compel him to testify in San Francisco was "invalid under Section 7 of the FAA." Mot. at 2.

Zwick brought this motion to compel on March 12, 2026. *See* Mot. at 1.[1] Prickel filed an opposition on March 26, 2026. *See* Oppo. Zwick replied on April 2, 2026. *See* Reply in Support of Motion to Compel [Dkt. No. 15]. I heard oral argument on April 22, 2026.

## DISCUSSION

Section 7 of the Federal Arbitration Act ("FAA") states, in relevant part:

> [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators[.]

---

[1] Prickel also filed a motion to quash the Subpoena in the Southern District of New York. *See Prickel v. Zwick*, No. 26-mc-00113-AS (S.D.N.Y. 2026). Magistrate Judge Stein issued a report and recommendation on May 5, 2026, indicating his belief that venue is proper in the Northern District of California to resolve this motion to compel, and that freestanding motions to quash, like the one filed by Prickel in the Southern District of New York, are improper under Section 7 of the FAA. *See Barnhurst v. Zwick*, No. 26-mc-1123, Report & Recommendation [Dkt. No. 26]. While the presiding judge in that case has not yet ruled on the issue, I agree with Judge Stein for the reasons described in his Report & Recommendation that a motion to compel in this District, rather than a motion to quash in the Southern District of New York, is proper.

9 U.S.C. § 7. The parties dispute whether I have authority in the Northern District of California to compel testimony for an arbitration that will ultimately be heard in New York. It seems obvious, as the arbitrators determined here, that the testimony of an individual who negotiated the 2020 Amendment is material. So material, in fact, that the arbitrators decided to sit in San Francisco for his testimony. Because Prickel resides in this district, I agree with Zwick that I have the authority to compel him to testify. And I will.

### A.    Mandatory Versus Permissive

The first issue over which the parties disagree concerns whether Section 7 is a mandatory or permissive venue provision. I do not find this question to be dispositive. Instead, as explained in detail below, Section 7 does not preclude arbitrators from sitting in more than one location to gather any material evidence. I nonetheless address the issue below.

Zwick maintains that Section 7 must be understood as "permissive and supplement[ing]" the general venue statute," 28 U.S.C. § 1391. Repl. at 2. To support his interpretation, Zwick cites to *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Company*, 529 U.S. 193 (2000). There, the Supreme Court granted certiorari to "resolve a split among the Courts of Appeals over the permissive or mandatory character of the FAA's venue provisions"—specifically, Sections 9, 10, and 11. *Id.* at 196. The Court considered the legislative history of the FAA at the time it was enacted, noting that the "special venue provisions in the FAA . . . had an obviously liberalizing effect, undiminished by any suggestion, textual or otherwise, that Congress meant simultaneously to foreclose a suit where the defendant resided." *Id.* at 200. It also recognized that the "most convenient forum for a defendant is normally the forum of residence, and it would take a very powerful reason ever to suggest that Congress would have meant to eliminate that venue for postarbitration disputes." *Id.* The Court ultimately found that reading Section 9 as permissive, but Sections 10 and 11 as mandatory, would produce a "bizarre," unworkable outcome, and held that all three should be read as permissive. *Id.* at 200–01.

Later, in *Textile Unlimited, Inc. v. A..BMH and Co., Inc.*, the Ninth Circuit expanded on the Supreme Court's holding in *Cortez Byrd* in a similar arbitration dispute. 240 F.3d 781 (9th Cir. 2001). The Ninth Circuit panel first acknowledged that *Cortez Byrd* addressed a "slightly

different question," as it focused on Sections 9 through 11 of the FAA, rather than Section 4, at issue here. *Id.* at 784. But the court reasoned that the Supreme Court's "analysis pertained to the FAA *as a whole*, and its logic [was] equally applicable here." *Id.* (emphasis added). "Indeed," the court noted, "*Cortez Byrd* . . . instructs [courts] to weave the various venue strands of the Act together into a seamless fabric which does not clash with other federal venue statutes." *Id.* "Such an analysis can only lead to a more elastic and complimentary construction of venues available under the FAA, including those founded on 28 U.S.C. § 1391 alone." *Id.*

Finally, Zwick cites *Jones Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131 (9th Cir. 2022). There, the Ninth Circuit confronted a different provision of the FAA—Section 204— in a dispute between the law firm Jones Day and one of its former partners, a "German national who was based in its Paris office." *Id.* at 1134. That dispute ultimately resulted in arbitration in Washington D.C., "the location designated" in the parties' mandatory arbitration agreement. *Id.* Jones Day issued a subpoena to the former partner's counsel, Orrick, Herrington & Sutcliffe, requesting "documents it deemed material to its claims against its former partner." *Id.* The arbitrator then issued a subpoena against Orrick, but the firm "failed to comply." *Id.* Jones Day requested that the arbitrator "sit for a hearing in the Northern District of California and issue a revised subpoena requiring two Orrick partners residing in the Northern District to appear at a hearing in San Jose, California." *Id.* The arbitrator agreed and issued the summons. *Id.*

Orrick again refused to comply. *Id.* Jones Day then filed an action in the Northern District of California to enforce the subpoena. *Id.* The Hon. Jon Tigar denied the petition, "concluding that [he] lacked authority to compel compliance with the summonses under FAA § 7, which [he] construed as providing that the district where the arbitrator sits is the only district in which a district court may compel attendance." *Id.* Judge Tigar also "rejected Jones Day's argument that an arbitrator can 'sit' in more than one location, and that for purposes of the hearing in San Jose, the arbitrator would be sitting in the Northern District." *Id.*

The Ninth Circuit reversed on different grounds. The panel found nothing in the text of Section 204 "indicate[d] that Congress intended the FAA venue provision to be exclusive or restrictively applied." *Id.* at 1140. It also noted that *Cortez Byrd* and *Textile Unlimited* confirmed

United States District Court
Northern District of California

the statute should be read as permissive. *Id.* at 1140–41. But because the court decided the case on Section 204 grounds, it concluded that it "need not resolve the parties' dispute as to whether 9 U.S.C. § 7 provides for venue (or where)." *Id.* at 1141 n.4.

Zwick argues that Judge Tigar's analysis of Section 7 should not control this case because the language in *Cortez Byrd* and *Textile Unlimited* regarding the history and purpose behind the FAA support a permissive reading of the statute. *See* Mot. at 4–6. He requests that I hold that "when the federal district court in the place of arbitration (here, New York City) lacks personal jurisdiction over the party against whom enforcement is sought (here, Nick Prickel, a resident of California), the action may be brought in *any* district court deemed appropriate under the general venue statute, 28 U.S.C. § 1391." *Id.* at 6.

In response, Prickel argues that "Section 7 is mandatory and limits enforcement authority to the district court of the district where the arbitrators, or a majority of them, are sitting." Oppo. at 4. He claims each of the cases cited by Zwick is inapposite because it addressed different provisions in the FAA. *See id.* at 5; *Cortez Byrd*, 529 U.S. at 200 (discussing Sections 9, 10, and 11, governing post-award motions to confirm, vacate, and modify arbitration awards); *Textile Unlimited*, 240 F.3d at 785 (Section 4); *Jones Day*, 42 F.4th at 1141 (Section 204, governing international arbitrations). Instead, Prickel encourages me to focus on the cases that it cites that directly held Section 7 is "mandatory and limits enforcement authority to the district court of the district where the arbitrators, or a majority of them, are sitting." Oppo. at 4 (citing *Matter of Arb. between Tang Energy Grp., LTD v. Catic U.S.A.*, No. 3:15-mc-80209-LB, 2015 WL 4692459, at *2 (N.D. Cal. Aug. 6, 2015) (Beeler, M.J.) ("The plain language of 9 U.S.C. § 7 requires that a person who wants a subpoena issued by arbitrators to be enforced do so by filing a petition in [sic] the district court in which the arbitrators are sitting. Numerous courts have recognized this requirement."); *HRC-Hainan Holding Co., LLC v. Yihan Hu*, No. 19-mc-80277-TSH, 2020 WL 906719, at *5 n.4 (N.D. Cal. Feb. 25, 2020) ("§ 7 explicitly confers enforcement authority only upon the 'district court for the district in which such arbitrators, or a majority of them, are sitting.'"); *In re Application of Grupo Unidos Por El Canal S.A.*, No. 14-mc-80277-JST (DMR), 2015 WL 1815251, at *10 n.7 (N.D. Cal. Apr. 21, 2015) (Ryu, M.J.); *see also Dynegy Midstream*

*Servs., LP v. Trammochem*, 451 F.3d 89, 95 (2d Cir. 2006) ("Here, the arbitrators were sitting in the Southern District of New York, so FAA Section 7 required that any enforcement action be brought there."); *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1158 (11th Cir. 2019) ("§ 7 requires the motion to be filed in the district where the arbitrators sit."); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999) ("[F]ederal courts have a duty to enforce arbitrators' summonses only within the federal district in which the arbitrators, or a majority of them, are sitting.").

The case law points in different directions, and neither the Supreme Court nor the Ninth Circuit have squarely addressed whether Section 7's venue language is mandatory. But parsing through the language of Section 7 is helpful. While Zwick focuses on the use of the word "may" in Section 7, *see* Repl. at 4, "the mere use of 'may' is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority," *Cortez Byrd*, 529 U.S. at 199 (citing *United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion[, but] [t]his common-sense principle of statutory construction . . . can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute" (footnote and citations omitted)). This alone would not support a permissive reading of the statute.

To focus on the word "may" would also ignore another key clause of Section 7—that a district court may compel a person to comply with an arbitral subpoena "*in the same manner provided by law for securing the attendance of witnesses.*" 9 U.S.C. § 7 (emphasis added). Numerous courts have recognized that the "same manner" clause incorporates Federal Rule of Civil Procedure 45, which provides that the "serving party may move the court for the district where compliance is required" for an order compelling compliance with a subpoena. Fed. R. Civ. P. 45(d)(2)(B)(i); *see Dynegy*, 451 F.3d at 95 ("Ordinarily, under Rule 45, such a subpoena would be issued by the District Court for the Southern District of Texas and could be enforced by that court. However, FAA Section 7 provides that subpoenas issued under that section may be enforced by petition to 'the United States district court for the district in which such arbitrators, or a majority of them, are sitting.' 9 U.S.C. § 7. Here, the arbitrators were sitting in the Southern

United States District Court
Northern District of California

District of New York, so FAA Section 7 required that any enforcement action be brought there.”); *All. Healthcare Servs., Inc. v. Argonaut Private Equity, LLC*, 804 F. Supp. 2d 808, 813 (N.D. Ill. 2011) (“The express terms of FAA section 7 limit this Court's arbitration subpoena enforcement authority to the authority it has under existing law. That authority is limited to the power conferred by Rule 45; there is no other rule or statutory provision that applies in this case. Rule 45, in turn, precludes issuance of a subpoena from this district to attend a hearing in the Northern District of California. This, combined with the fact that FAA section 7 permits only a court in the district where the arbitration is being conducted to enforce an arbitration subpoena, no doubt creates an enforcement gap. But it is up to Congress, not a court, to fill such gaps.”).

In response, Zwick maintains that:

> Adopting Respondent's restrictive interpretation of Section 7 would create a venue gap. He maintains that Section 7's special venue provision is exclusive and limits venue to the seat of arbitration. If that were correct, then the district court where the witness resides— where he is subject to personal jurisdiction and where venue is proper under the general venue statute—would not be a proper venue, unless the witness just so happened to live near the seat of arbitration. For any witness who lived anywhere else in the nation, there would be no means of enforcing an arbitral subpoena in federal court. There is no basis to conclude that Congress intended to create this massive venue gap.

Repl. at 8. Because the “text of Section 7 contains no suggestion that Congress intended for subpoena enforcement to be limited to witnesses living near the seat of arbitration,” Zwick claims that finding in favor of Prickel would be unnecessarily restrictive and contrary to the goals of the FAA. *Id.* at 9. Prickel conceded at oral argument that this venue gap exists but contends that such gaps exist every time parties litigate in federal court.

“[A]s a general matter, courts have interpreted special venue provisions to supplement, rather than preempt, general venue statutes.” *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1409 (9th Cir. 1989). “The general federal venue statute, 28 U.S.C. § 1391, ‘shall govern the venue of all civil actions brought in district courts of the United States.’” *Day*, 42 F.4th at 1140 (quoting 28 U.S.C. § 1391). Section 1391 “ensures that so long as a federal court has personal jurisdiction over the defendant, venue will always lie somewhere.” *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 57 (2013). “Congress does not in general intend

to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other." *Id.* (quoting *Smith v. United States*, 507 U.S. 197, 203 (1993)). "Only where there is evidence 'that Congress intended the specific venue provision to be exclusive or . . . restrictively applied' will parties be deprived of relying on the general venue statute." *Day*, 42 F.4th at 1140 (quoting *Go-Video, Inc.*, 885 F.2d at 1409).

Both *Cortez Byrd* and *Textile Unlimited* acknowledge that the FAA had a "liberalizing effect," 529 U.S. at 203, and that courts should "weave the various venue strands of the Act together into a seamless fabric which does not clash with other federal venue statutes," 240 F.3d at 784. The Ninth Circuit has also recognized that *Cortez Byrd*'s "analysis pertained to the FAA *as a whole*, and its logic [was] equally applicable" to other provisions. 240 F.3d at 784 (emphasis added). I agree with Zwick that this venue gap potentially exposes a significant weakness in the structure of Section 7 if read as an exclusive provision. But under the facts of this case, where the arbitrators have decided to sit in San Francisco to hear the testimony of Mr. Prickel, that potential gap is closed.

### B.      "Sitting In"

The central issue question is whether the arbitration panel is "sitting" in the Southern District of New York—the designated situs of the arbitration and where all three arbitrators reside—when it chooses to hear testimony in the Northern District of California. Courts have reached mixed conclusions on this issue.

Some courts have found that the "sitting in" language must be strictly interpreted to allow proceedings *only* in the seat of arbitration defined in the Arbitration Agreement—here, New York. *See, e.g.*, *Black v. Emerson*, No. 25-cv-1035-WJM-NRN, 2025 WL 2391499, at *3–4 (D. Colo. Aug. 18, 2025) ("[T]he vast majority of federal courts to have considered precisely the issue before this Court have concluded that they lacked authority to enforce arbitral summons that compelled compliance at a one-time hearing within their district, when the seat of the arbitration was located elsewhere."); *Campaign Registry, Inc. v. Tarone*, No. 24 Civ. 2314, 2024 WL 3105524, at *2 (S.D.N.Y. June 24, 2024) ("[C]ourts across the country have concluded that the arbitrator is sitting where the underlying arbitration is being administered—not the place of

*United States District Court*
*Northern District of California*

9

United States District Court
Northern District of California

production.") (internal quotations omitted); *see also Rembrandt Vision Techs., L.P. v. Bausch & Lomb, Inc.*, No. 1:11-cv-2829-JEC, 2011 WL 13319343, at \*3 (N.D. Ga. Oct. 7, 2011), *report and recommendation adopted*, 2011 WL 13319422 (N.D. Ga. Oct. 28, 2011) ("Omitted from the statutory text is any indication that 'the *district* in which such arbitrators, or a majority of them, are sitting' is a flexible term meaning wherever the arbitrators or a majority of them happen to be at the time of a hearing.") (emphasis in original).

Although the Ninth Circuit reversed on different grounds, Judge Tigar also found that the "sitting in" language refers only to the situs of arbitration in *Jones Day*. There, he noted:

> Courts have held that motions to enforce summonses must be brought in the district court covering the location in which the arbitrators are sitting and not, if the two locations are different, in the district court covering the location to which the parties were summoned. For example, one court explained that, where an arbitration proceeding was being conducted in Chicago, "only a court in [the Northern District of Illinois] may enforce a subpoena issued by the arbitrators" under 9 U.S.C. § 7. *All. Healthcare Servs., Inc. v. Argonaut Priv. Equity, LLC*, 804 F. Supp. 2d 808, 811-12 (N.D. Ill. 2011). This was true even where the subpoenas "call[ed] for production of documents and attendance at a hearing in San Francisco." *Id.* at 811. As another court explained: "The plain language of 9 U.S.C. § 7 requires that a person who wants a subpoena issued by arbitrators to be enforced do so by filing a petition [in] the district court in which the arbitrators are sitting. Numerous courts have recognized this requirement." *Matter of Arb. between Tang Energy Grp., Ltd. v. Catic U.S.A.*, No. 3:15-mc-80209-LB, 2015 WL 4692459, at \*2 (N.D. Cal. Aug. 6, 2015).

*Day v. Orrick, Herrington & Sutcliffe LLP*, No. 21-mc-80181-JST, 2021 WL 4069753, at \*2 (N.D. Cal. Sept. 7, 2021) (Tigar, J.).

Other courts have held that the "sitting in" language should be interpreted flexibly, encompassing situations like the one in this case, where an arbitrator travels to another district to attend a one-off proceeding. *See, e.g.*, *Symetra Life Ins. Co. v. Admin. Sys. Rsch. Corp., Int'l*, No. 21-2742, 2022 WL 16730542, at \*4 (6th Cir. Nov. 7, 2022) ("[Defendant] submits that the arbitration panel may 'sit' only in one location: where the final hearing is to be conducted. Here, that would be Houston, Texas. But the FAA's text contains no such restriction, and we decline [defendant's] invitation to read additional terms into the statute . . . The arbitration panel declared that it was sitting in Grand Rapids, Michigan, for the hearing related to the subpoena at issue.

Under the circumstances of this case, we thus hold it was not improper for [plaintiff] to bring this action in the Western District of Michigan."); *Moyett v. Lugo-Sánchez*, 321 F. Supp. 3d 263, 267 (D.P.R. 2018) ("Indeed, that the arbitrators reside in the continental United States does not preclude them from 'sitting' in Puerto Rico for the arbitration hearing."); *Shirvanian v. Byers*, No. 16-21261-Civ-KING/TORRES, 2016 WL 11754322, at *3–4 (S.D. Fla. Sept. 22, 2016).

The AAA Rules seemingly adopt this latter view. They provide that the arbitrators, in their "sole discretion," have the "authority" to "conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process." AAA Rule 12. The arbitrators here decided to compel Prickel to testify in San Francisco.

Prickel asserts that the AAA Rules are not binding on non-parties, and that an "arbitrator's subpoena power over *non-parties* derives exclusively from Section 7." Oppo. at 7–8 (citing *McTammany*, 2015 WL 12781404, at *2 ("An arbitrator's authority over parties that are not contractually bound by the arbitration agreement is strictly limited to that granted by the Federal Arbitration Act.") (quoting *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 406 (3d Cir. 2004)); *see also Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008) (noting that the AAA Rules are not binding upon non-parties and a party seeking discovery from a non-party to an arbitration "is limited to [S]ection 7 as a vehicle to enforce the subpoena.")). But while the AAA does not have the authority to compel testimony in this circumstance, a federal district court does in the same manner as a court does under Rule 45. Section 7 does not prohibit arbitrators from sitting in more than one district, and the parties chose AAA Rules that specifically contemplate them sitting in more than one district. Moreover, while a district court cannot compel someone who is out of the district to testify, it has the authority under Rule 45 to compel someone in the district to testify.

The 2013 amendments to the FRCP support this conclusion. Rule 45 was amended to allow for nationwide service of arbitral subpoenas. *See* Fed. R. Civ. P. 45. Because Section 7 "incorporat[es]" Rule 45, these amendments also apply to Section 7. *See Managed Care Advisory Grp., LLC*, 939 F.3d at 1157. To read Section 7 in the limited manner as Prickel suggests would render the amendments meaningless unless they could be enforced nationwide. "Indeed, such a

11

holding would greatly circumscribe an arbitration panel's ability to decide a case, potentially discourage litigants from arbitrating disputes involving nonparty witnesses in multiple locations, and thus contradict 'the strong federal policy in favor of arbitration.'" *Wash. Nat'l Ins. Co. v. OBEX Grp.*, No. 18 CV 9693 (VB), 2019 WL 266681, at *5 (S.D.N.Y. Jan. 18, 2019) (quoting *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006)).

Prickel's interpretation would create a significant justice gap and would curtail the power of arbitrators and courts alike to seek efficient and just resolutions of their matters. I conclude that the text of Section 7, together with the purpose and structure of the FAA and its Rule 45 counterpart, supports interpreting the "sitting in" language to permit arbitrators to "sit" in locations other than the site of the final hearing to gather evidence and testimony that are reasonably necessary and beneficial to the proceeding.

<div align="center">**CONCLUSION**</div>

Because the arbitrators are "sitting" in the Northern District of California for Prickel's testimony, Zwick's motion to compel arbitration is GRANTED. If the arbitrators select a new date for the hearing (the original date of April 20, 2026, has passed) in San Francisco, Prickel is required to comply and attend.

**IT IS SO ORDERED.**

Dated: May 22, 2026



William H. Orrick
United States District Judge